No. 06-1650 Petersen, Releasagen Manufacturing and CutClean Chem v. Akona Clean Products v. Stephen Hodges Mr. Perry Good morning and thank you, Your Honor. This case calls into question two different Rule 56s. And rule, what's known as Rule 56 of the PTO's regulations, which is 37 CFR 1.56, which is known as the Duty of Candor Rule. In this case, what happened, the central important policy principle that this Court is reviewing today, deals with the fact that the rightful inventor, the rightful sole inventor, was totally excluded in the patent application process. And a person who did not invent submitted a declaration to the PTO stating that he was the sole and only inventor of the patented product in this case. The district court's decision not only engaged I thought the issue of the case was about an implied license to assign, shop right Hired to invent Yes It is, it is, Your Honors, but Hired to invent, yes The duty of candor is an overarching consideration subsumed within these issues. It's basically a sub-issue, but it's a very important policy consideration in this case. But Mr. Perry, if in fact the court below is correct in determining that we have a hired to invent situation, then we don't get to what did or did not happen before the PTO, although I realize there may be some equitable considerations in the shop right issue. But where do you say the district court made error on the determination that it was made with respect to hired to invent? Your Honor, on the hired to invent issue, that question is kind of a classic question of fact. In other words, is there evidence that was presented sufficient to try the issue of whether or not the parties had a meeting of the minds, basically an oral agreement, where the plaintiff wholesale assigned his patent rights to the defendant. Under the Minnesota case, which is the primary precedent that the courts are obligated to follow if there is any state law case on the issue, we have the Dean versus Hodge case out of Minnesota, very old, over a century old. But there was actually a presumption in that case of compensation if there's evidence, even if where there was significant acquiescence on the plaintiff's part. In other words, this case isn't about whether Mr. Peterson was either a sole or joint inventor. That was certainly an issue in the trial court. I don't believe it's an issue on appeal though. I think that's my reading of the brief. Because the court really didn't quite get to that issue. In other words, even assuming he was, that's the posture of the case. Yes, it is, Your Honor. Although when I talk about shop rights, the sole inventorship issue winds its way back into the case under the equitable considerations that I was talking about under Rule 1.56. Your Honor, in this case, all of the evidence, and we've listed it at page 44 to 45 of our brief, there's a bullet point list of a collection of the key evidence on the hire to inventorship that shows that there was, from the get-go, Mr. Peterson wanted compensation and insisted on compensation. There's an affidavit that was submitted that shows the $1,450 he was paid was not intended to be full compensation for the development and the use of the product. The defendant's own vice president admitted that Mr. Peterson wanted a sole supplier relationship in order to compensate for the use of the product. But the invent for hire cases, such as Teats, for example, that the defendants relied upon and the trial court relied upon all deal with the situation where there was really no discussion of compensation. We have presented admissible evidence to raise fact questions on whether there was an intent between the parties of basically an oral contract or an implied contract for a wholesale assignment of any and all ownership rights away from Mr. Peterson to a company. But if he was hired to invent, to do this, then isn't that all there is to the case? If he was hired to invent, then that settles in. There was compensation for his work, obviously, right? There was some compensation. In answer to your question, Your Honor, I believe the answer to that question is no. I mean, we can engage in labeling something as hired to invent or as a shopwright, but there's more to the analysis. Well, the shopwright sort of assumes he's an employee already. It does. Hired to invent seems to fit, if anything does, closer. I think that's probably the more direct offense here. But what we're dealing with here is the defendant, the court concluded as a matter of law that there was no evidence to overcome the meeting of the mine standard because simply, if a defendant in this case simply hires somebody to invent, it depends on the facts and the circumstances to know what the scope of that employment was, what the compensation was, what the intent of the parties was. Those questions are all inherently fact questions. Hired to invent, the case law, as Teats teaches us, is that it basically is an implied contract to assign patent rights, and there has to be a meeting of the mines between the parties in order for that to occur, and that's where the fact issues become apparent in this case. And this is where we have competing evidence submitted by the defendants. But in the absence of something expressed to the contrary, if someone is hired to invent, isn't it clear that the hirer owns the property? No. If hired to invent is an ultimate conclusion where the court, after considering the facts, has looked at the facts and found that there was a meeting of the mines between the parties to transfer and assign patent rights implicitly, then the answer to your question would be yes. But if there's a fact dispute as to whether or not there was a meeting of the mines, which is exactly what we have here... If I hire you to invent, if you're the inventor, certainly that goes on the patent, but if I hire you to invent, isn't it implied that I own the invention? And even in the absence of an express agreement, corporations hire people to invent all the time, and common law gives them those rights. Usually, if they're up to date, they have expressed agreements. But isn't there an implication there? Not necessarily, Your Honor. There really isn't. It all goes back to the meeting of the mines issue. There may be a shop, right? It depends on, did the person who was hired use some of their own resources? Did they use the employer's resources? Was there an intent to assign? So those are shop-right considerations, whose resources were used, whether it was on company time. They are, but I think there's also some carryover to the hire-to-invent issue because of the fact that the court, in order to arrive at the conclusion of the meeting of the mines, just simply doesn't, or shouldn't, we argue, look solely at the question of, or to put a label on the situation and arrive at a conclusion based on the label. And here, there was all kinds of evidence of the intent for future compensation, of a pittance to develop a multi-million dollar product for $1,450, where the invoice that was submitted specifically stated that there was going to have to be a sole supplier relationship for the use of the product. And all of those things go to the question of whether there was a meeting of the mines or not, and we submit that that's a material fact issue. So are you not relying on the confidentiality agreement or any provisions? We are, Your Honor. We are, and of course, as indicated in the brief, if the court determines there were fact issues as to whether the NDA, the non-disclosure agreement, precluded a transfer of the intellectual property, then you don't even get to hire to invent or shop rights in the first place because there's an express contract. Of course, Pedersen is the plaintiff here. He wasn't party to that agreement. Your Honor, if that's the case, then he wasn't hired to invent either because his corporations were paid for the invention, not him. And that is in our reply brief where we indicated that the defendants returned to have that argument both ways. On the one hand, they argue that Pedersen was paid the $25 an hour. He wasn't. His corporation was paid $25 an hour. This is a mess. I.e., a fact question. The invoice says compensation. Compensation agreed upon by Howell, Hodges, and Pedersen. So, I mean, that looks like it's to Pedersen. It does. But the parties were clearly dealing in a corporate-to-corporate capacity on the payment issue because there's no dispute in it. The evidence shows that the check, the invoice was submitted to Acona on releasage and letterhead. The check from Acona was payable to releasage. And I don't want to have it both ways here. The reality is that we're dealing with individuals who are acting through corporations. There's a clear agency relationship in place. The NDA is crucial. There are fact questions as to whether there were disclosures under the NDA or not under the NDA. The judge and the defendants argue that the disclosures all occurred prior to May 26th, but there was experimentation that we submitted in the record taking place on May 27th. And the final formula was on June 4th. This case is replete with fact questions, and, Your Honors, I think the Court just simply engaged in fact-finding here. It should have allowed this case to be tried, and that's all we're asking for. I see my... Yes, you're into your rebuttal time.  Thank you, Your Honors. On the way back, I see your firm is Perry, Perry, and Perry. Are you the first, the second, or the third? I'm in the middle of one, Your Honor. Mr. Morton. Please record the morning. I represent the Defendants Clean Products, formerly known as Acona, and Stephen Hodges. I'll probably refer to you as Acona because that was the name of the company in all the documents and all the depositions. As I think the Court has pointed out here today, we're not here to decide if Pedersen is the inventor. My motion, the district court's order, assumes that he is. And we're also really not in this litigation because of an oral contract for a five-year supply, where Pedersen got three and a half years of supply, or his protection of rights argument. We're here because Pedersen wants money for patent infringement. We're here really only because my client filed a patent. According to Pedersen, because Acona filed for a patent while he did nothing, Acona created a right for him to sue them for patent infringement. And that just can't be the case, and isn't the case, under the law or the facts. Very crucially, I thought, in the reply brief, Pedersen admits that Acona had no duty to file a patent application on his behalf. They could have done absolutely nothing, and we would not be here today. There would not be any lawsuit. Pedersen would have no claim. The idea that he can now join Acona unless they pay a royalty just can't be correct. And the district court can see that, and that's why there's summary judgment granted on multiple grounds on the contract issues and the patent issues. And I think the main thing to point out there, this is a case that's on summary judgment, on appeal. And the district court's order is based entirely on documents that I put in front of Pedersen, and he authenticated, and admissions that he made. All those facts, that what I relied on in this motion, are not in dispute. The case is right for summary judgment. And I can go through some of those on various grounds that the district court has granted summary judgment. First of all, there's this item. The only issue was inventorship, and the other issues which are raised in the briefs were not before the district court, such as an implied obligation to pay for use of what was developed. Setting the patent aside, for instance. The basis of the motion was that the oral contract, there's supposedly an oral contract for a five-year suppliership, and payment for a time while working on the product, and the protection of rights, a very ambiguous clause. And the basis of the motion was that those things were endowed under the statute of frauds. Also, the no visible jury could find any of those existed, and the court also found that protection of rights was too vague to enforce. So those are the issues with the contracts, and I think that they're completely correct. I mean, the idea of a five-year contract is clearly more than one year, but it falls under the statute of frauds. Also, this was for more than $500, falls under the statute of frauds. There's no serious argument that it's not. And there's no written evidence of a five-year deal. There's no written evidence of protection of rights. Nothing obviously signed by a counter. I think the critical piece of evidence there shows there's just nothing about this extra compensation for use of the invention is the only thing signed by a counter was their offer to Pettersen. We'll give you a long-term supply deal. It was a blank number of years. We'll give you a long-term deal in return for the name of your supplier, because we're just concerned about the reliability of the supply. Undisputed fact, Pettersen rejected it. That was the end of the discussions on the contract. He did not accept a long-term deal, because he wouldn't give up his supplier. After that, they just started operating on an order-by-order basis. And there's no more discussion about the full compensation or compensation for use of the invention. That's just not written anywhere. It just does not exist. What's the total compensation Pettersen got for all of this? He requested his hourly rate to be $25 an hour. He billed 52 hours. That was $1,350, I think. Plus, he put a little expenses on there. He was also paid for his expense, so it was $1,450. And then he got what was really his goal. If you look at these facts, it's very clear. He wanted to supply super-oxygen to Oklahoma. That was the goal, and he achieved that. He got to be the supplier. And they bought from him for three and a half years. I haven't worked up with the exact amount that he was paid over that time, but he got multiple truckloads at $8,000 to $10,000 a truckload over those years. So that's the compensation that he bargained for. That's the compensation that he received. At this point, as far as any contract issue, I think plaintiffs are not relying entirely on this NDA. I want to point out why the NDA is just irrelevant on at least four different grounds. First of all, this is not clearly an NDA. It's not an NDA. It's not an agreement about inventorship rights. Well, inventorship rights go by law. You can't contract away your right to be an inventor if you're an inventor. That's correct, Your Honor. So they're not about ownership rights. It's not, I won't assign my invention if I work for you, or I will assign it. It's just not addressing that. On summary judgment, there's no question as to inventorship. Is that right? Is there a question as to inventorship? Yeah. This summary judgment motion assumes the facts as Pedersen states them, that he is the inventor. There is an issue with the case about inventorship. Does it assume sole inventorship or joint? Sole inventorship. Sole inventorship. I had an alternate theory, and it is present on appeal, that you could affirm based on the fact that they cannot show clear and convincing evidence that Stephen Hodges, my client, is not an inventor. Under the Thompson v. Cain's case, that's their standard. It's not just they have evidence that Pedersen is an inventor. They have to prove that Hodges, clear and convincing evidence, is not an inventor. So that is an alternate ground. It's not the centerpiece of the, it's not what the court's, the district court's decision is based on. Well, but there was summary judgment, so it's not an alternate ground for anything, is it? On summary judgment, we have to accept the assertion of inventorship and either also accept as a matter of law some other theory, such as shop right or assignment. But again, this is summary judgment, and these are factual questions. Yes. I mean, the district court's decision and the focus of the appeal absolutely assumes that Pedersen is the sole inventor. So Pedersen is the sole inventor. There's a patent owned by now, ACONA, which names Hodges, not Pedersen. Yes. But that's not the challenge on appeal here, right? The challenge is ownership, not inventorship. Ownership, exactly. Not inventorship. Exactly. And, I mean, I can come back to the NDA, but on the ownership of the patent issue, the district court granted two grounds, hire to invent and shop right. So under the hire to invent doctrine, obviously, Pedersen is required to assign any rights he has to ACONA. Under shop right, ACONA simply has the right to use. Which is the stronger argument in your view? The, I don't think there's a stronger argument. I think they both are based on absolutely undisputed facts that just line up exactly with the primary case that we cited. The shop right assumes an employee relationship. Yes. Hire to invent situation doesn't necessarily, or does it? You can hire an independent contractor to invent, right? If you look at the McElmurray decision, which is the main decision that we rely on. Out of Minnesota? No, the Federal Circuit decision. Footnote, I believe it's 15, says that it doesn't matter if you're an independent contractor. And so I rely on that to say, if he's an independent contractor in that situation, that's fine. He is still very clearly hired to invent. And that is the primary fact on the hire to invent side, is that he was hired to work solely on this product. There's no question, this is it. This is the only thing he was hired to do. He wanted to do it, he did it. He was paid for his time. It was the whole point. He's hired to develop a product that his company would supply. Is that the same as hired to invent as an independent contractor? Well, he's not exactly developing a whole product. Kona had a product called Clean Sweep that they were manufacturing and selling. They had $500,000 or $600,000 in sales a year at the time. And they just had an issue with it. They needed to do something to help with this dry out problem they were working on. So this project is just to add one ingredient to the mix. Okay, but does that change anything? I don't believe it does. I mean, that's a separate thing that he wanted to do later. I didn't think it changed anything. That's why I was wondering why you were emphasizing as to whether it was one ingredient or two ingredients. Oh, yeah, I'm just explaining the fact pattern in front of the court. I don't think that it makes any difference. He was hired to do what he was hired to do and also supply. It's in the business of providing ingredients. And so a potential customer says, I have a problem. And he figures out how to solve the problem for which he provides the ingredients. I'm trying to, as a different company, different entity. He's obviously not an employee of ACONA. So when you go to a potential supplier and say, I have a problem. Can you solve it? Automatically, that entity, that person loses all rights. Perhaps if they did everything on their own and were going to design this anyway, it would be a different case. I mean, in this case. Well, this is summary judgment as well. So there are some questions as to what was understood or agreed that really can't be resolved against Patterson on summary judgment. Well, the undisputed facts of what was agreed is what he asked for. He asked for $25. He wanted to be paid for the time that he was spending to develop the product. I don't know that that's the same as being hired to invent. That's covering his out of pocket, not necessarily an assignment of all rights in everything that results from that hourly payment. I think if an independent contractor can be hired to invent, then you're going to have that situation most of the time. He also spent a lot of his time at ACONA, by his estimation, at least 40% of his time at ACONA using their equipment and other factors. The court looks at it. ACONA paid for the prosecution. It eventually happened. And Patterson never disputed that they could do it. Patterson helped in the prosecution? Patterson helped in the prosecution, exactly, and at that time didn't dispute that Hodges was an inventor. But he asked to be included, did he not, from the beginning? He says that he asked to be listed as an inventor when he was helping with the prosecution. That's correct. But he didn't say anything about ownership. He didn't say anything. I asked him at every stage in the development, did you ever tell ACONA they couldn't make this product without your permission? No. Did you ever tell them you own the patent? No. Anything like that. I asked him when they were negotiating in 1998. I asked him when he helped with the patent in 2000, when he found out the patent issued in 2000. When he was dumped as a supplier in 2001, he still didn't say anything like, I own the patent, you can't make Green Suite. You owe me a royalty. Never. Anything like that. He supplied again in 2003, didn't say anything. 2004, he didn't say anything. Even when his first lawyer contacted the company, they just said he should be listed as an inventor. It wasn't until this lawsuit was the first time he ever said, I should own the patent, you can't make the product without my permission, you owe me a royalty if you do. That kind of bleeds into the other legal theory of applied license that occurs over the period of his time as a supplier. When you look at it all together, it's a very clear situation. He was hired to invent, and it was shot right at the hand of the applied license based on their ongoing dealings. Any questions? No questions. Thank you, Mr. Morton. Thank you very much. Mr. Perry. Thank you, Your Honor. Excuse my question. At page 42 to 43 of our opening brief, we quote from the Banks v. Unisys decision, which was this court's last word on the hired-to-invent test. Judge Lora, you were asking the questions earlier. Does merely being hired to invent answer the question you have before you? This court in Banks, and I'm quoting now from page 1359 of the Banks decision at page 42 of my brief, held that an implied-in-fact contract is an agreement founded upon a meeting of the minds which, although not embodied in an express contract, is inferred as a fact from the comment of the parties showing in light of the surrounding circumstances their tacit understanding. When applying the employer-employed-to-invent exception, a court must examine the employment relationship at the time of the inventive work to determine if the parties entered into an implied-in-fact contract to assign patent rights. State contract principles provide for the rules for identifying and enforcing implied-in-fact contracts. Then, on top of page 43, I cite from the Teats case, or quotes from the Teats case in which this court held, the existence of an implied-in-fact contract to assign inventive rights is a question of fact. And then we discuss Minnesota law below that, that reaffirms, and is consistent with federal circuit law, that the existence of an implied-in-fact contract is a fact question. And that's where we think the crux of this case depends on, or comes down to, in terms of the fact issues. The other thing that, I'd like to go back to the Rule 1.56, the duty of candor issue, because that really is important here. If Acona had honestly, in the declaration to the PTO, claimed that Mr. Peter Pedersen was either a sole or a joint inventor, even if it was a joint inventorship, we probably wouldn't be here today, because they would have been going through the process through what I consider to be the front door. They would have needed an assignment for Mr. Pedersen to transfer that patent to Acona. They didn't do that. They didn't even tell Mr. Pedersen they were applying for a patent. And they knew full well that Mr. Pedersen was the sole inventor. And this was another fact issue that's buried in the shop rights analysis, but this whole question of who came up with the idea to add superabsorbent. Well, the story that Mr. Hatches tells was that he learned about superabsorbent from a demonstration five years earlier that Mr. Pedersen and Mr. Minkama did for him. Well, Mr. Morton says that the record is replete with the history of Mr. Pedersen not having asked to be, not having pressed any inventorship rights through the several years. It's very hard to ask us here now to say that he was entitled to have done so, could have done so, and we're going to fix it, even though he made no attempt to fix it for himself. Well, the question, and I believe this is a big fact question in and of itself, Your Honor, is was there acquiescence here or was there trust and reliance? Mr. Pedersen's affidavit indicates that, and his testimony, that he asked that his name be put on the patent. He's a very unsophisticated guy. He didn't have counsel at the time. He was relying on Acona's patent counsel to protect his rights, and he says so in his affidavit, and relying on Mr. Hatches' assurance that his rights would be protected. Mr. Pedersen also, his affidavit also indicates that the only other times he was involved in patents was when he was at General Mills in another company where he had to sign a document assigning all his rights. Here the concepts are just the opposite. Mr. Pedersen did ask to be protected. Yes, there was delay. He couldn't, he went to counsel eventually, couldn't find the documents. The lawyer told him he couldn't do anything without the documents, and when the documents surfaced, he pressed his rights forward here. But whether there's acquiescence waiver sufficient to give us the opportunity to test the defendant's defense at trial is a question of fact in and of itself. And remember that what the trial court did here, Your Honors, is he ruled that the defenses were established as a matter of, well, this is something the defendants have the burden of proving. We presented material, admissible facts to challenge every assertion that was made upon which the judge relied. And, I mean, I can understand the acquiescence argument, and a jury may agree with that. A jury may say that Mr. Pedersen waited too long or acquiesced as opposed to not being entitled to trust the defendants. But that's a fact issue, unless there's no facts in dispute, and we just don't have that situation here. We have all kinds of facts in dispute on every issue that the judge decided this case upon. And the other thing, going back to the policy, to allow ACONA to have a government-granted monopoly that it acquired based on a false declaration that it submitted to the PTO, and then to be given basically a bulletproof vest for successfully pulling off the heist, if you want to think of it that way. It just doesn't seem right to us, or fair. I think we have to wrap it up, Mr. Perry. We're over time. Thank you, Judge. Oh, Your Honor, can I just comment real quickly on one question that you asked Mr. Martin? Okay. You asked if there were other claims asserted below besides a patent infringement that didn't depend on the contracts per se. And there were. We alleged unjust enrichment as well as an implied contract for payment under the Dean v. Lynch case. And are those claims still pending? Yes, they are. And we submitted in the briefs that those claims were improperly reversed as well. This isn't solely a patent infringement case, and it's not in that posture up here. I'm sorry, I asked if they were still pending, and you said no or yes. Oh, they were before the court, but they were dismissed as part of the summary judgment. Oh, all right. Okay. And it's our position that they were improperly dismissed because of the law of the fact questions. Thank you. Thank you, Mr. Perry, Mr. Morton. Case is taken under submission.